UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
UNITED STATES OF AMERICA,

    -against-

WALTER JOHNSON,                      **MEMORANDUM AND ORDER**
                                          Case No. 1:96-CR-932-FB-1

            Defendant.
------------------------------------------------x

*Appearances*

For the United States:
BREON PEACE
United States Attorney
By: FRANCISCO J. NAVARRO
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

For the Defendant:
JUSTIN C. BONUS
Law Office of Edmond R. Shinn, Esq., Ltd.
118-35 Queens Blvd.
Suite 400
Forest Hills, NY 11375

**BLOCK, Senior District Judge:**

    Walter Johnson ("Johnson") is serving five concurrent life sentences for Hobbs Act robbery conspiracy, attempted Hobbs Act robbery, narcotics trafficking conspiracy, attempted possession of narcotics with intent to distribute, and witness tampering. After hearing testimony from the primary victim of these crimes, Crystal Winslow ("Winslow"), as well as her boyfriend, JayTee Spurgeon ("Spurgeon"), a jury convicted him of these counts on December 8, 1997. Pursuant to 18 U.S.C. § 3559(c) ("Armed Career Criminal Act"), mandatory life sentences attached to three of Johnson's convictions due to his prior state convictions for second degree robbery, first degree robbery, and attempted first degree robbery.

Following an unsuccessful appeal attacking the constitutionality of the Armed Career Criminal Act ("ACCA") and seeking to recall Winslow as a witness against him, *see United States v. Johnson*, 181 F.3d 83 (2d Cir. 1999), Johnson moved to vacate his convictions pursuant to 28 U.S.C. § 2255. He argued that his trial counsel was ineffective for refusing to allow him to testify and for failing to sufficiently investigate Winslow, who Johnson argued testified falsely against him. The Court denied his petition, finding that Winslow's credibility "was fully explored at trial" through vigorous cross-examination, and that Johnson's petition lacked merit. *See Johnson v. United States*, 2001 WL 1112028, at *1 (E.D.N.Y. Sept. 21, 2001).

In June 2016, Johnson filed a successive petition under 28 U.S.C. § 2255 arguing that the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), which found that the residual clause of the ACCA defining what constitutes a violent felony was unconstitutionally vague, invalidated its application to him. Because the Court lacked jurisdiction over the successive petition without a mandate, it was moved to the Second Circuit, which stayed the motion pending further briefing on whether Johnson was entitled to relief under *Johnson*. In June 2020, Johnson filed a supplemental petition in the Second Circuit, adding claims of actual innocence and ineffective assistance of counsel, as well as arguments related to his age at the time of his crimes. In September of that year, the Second Circuit lifted the stay and granted Johnson's motion for leave to file a successive § 2255

2

petition in the district court, which he did.[1] The Court addresses each of the four issues Johnson raises in his petition in turn.

A.     **Ineffective Assistance of Counsel**

Johnson argues that his trial counsel was deficient because: (i) he failed to call as a witness Tamara Johnson, the defendant's sister, who purportedly would have testified that Winslow was lying; (ii) he failed to call attorney Andrew Rendeiro, who apparently met with Winslow prior to the trial and could have "provided insight into Winslow's recantation"; and (iii) he failed to use a file from Kings County Supreme Court (the "Kings County File") that Johnson states would have shown that Winslow had hired an attorney due to concerns about perjury before a state grand jury. Petitioner's Supp. Mot. to Vacate at 16.

First, the statute of limitations for § 2255 petitions is one year from the date on which the judgment becomes final or the date on which the underlying facts supporting the claim for relief could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f)(1), (4). Johnson's convictions became final on September 8, 1999, meaning he was required to bring his ineffective assistance of counsel claims concerning his counsel's decision not to call certain witnesses by September 8, 2000. Johnson's first habeas petition, which was timely, contained ineffective assistance of counsel arguments, though on

---

[1] Subsequent to Johnson's petition being fully briefed, the Supreme Court decided *United States v. Taylor*, 142 S. Ct. 2015 (2022), where it held that attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause of 18 U.S.C. § 924(c), because that clause was unconstitutionally vague. To ensure that the parties were fully heard on their *Johnson* vagueness arguments, the Court requested supplemental briefing from the parties as to what effect if any Taylor may have on those claims. Now that the Court has received this briefing, Johnson's successive petition is ripe for adjudication.

different grounds. To defeat the time bar, Johnson's ineffective assistance of counsel clams must relate back to the claims in his first petition. *See Diaz v. United States*, 2020 WL 3403057, at *13 (E.D.N.Y. June 19, 2020) ("[E]ven an ineffective assistance of counsel claim, when alleging a different ground for ineffective assistance, does not relate back to an earlier ineffective assistance claim." (internal quotation marks omitted)). Johnson's claims here are based on his trial counsel's failure to call certain witnesses, which are separate from the claims in his first petition—that his counsel refused to let him testify and did not sufficiently investigate Winslow.

Johnson's claim relating to the Kings County File is also time-barred. To be timely, his petition should have been filed within a year of Johnson becoming aware of the file. *See* 28 U.S.C. § 2255(f)(4). In his motion, he notes that it came into his possession in 2018, but he mentions it for the first time in his supplemental petition, which he filed in June 2020.

Had Johnson's ineffective assistance of counsel claims been timely, they would nonetheless fail on the merits. Trial counsel are given wide strategic latitude to present their case, and that includes decisions about which witnesses to call to testify. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984) (explaining that a "heavy measure of deference" is afforded to tactical decisions made by defense attorneys at trial). "[C]ounsel's decision as to 'whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation.'" *Id*. (quoting *United States v. Best*, 219 F.3d 192, 201-02 (2d Cir. 2000) (denying an ineffective assistance claim regarding trial counsel's failure to call a certain witness). Here, the decisions not to call Rendeiro and Tamara Johnson were tactical ones not rising to the level of unreasonableness

4

required by *Strickland*. Johnson also cannot affirmatively prove prejudice resulting from these decisions, which is required to make out an ineffective assistance of counsel claim. *See* 466 U.S. at 687-88, 693-94 (holding that a successful claim of ineffective assistance of counsel must show that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms," and "affirmatively prove prejudice.").

The same is true of the decision of Johnson's trial counsel not to use the Kings County File, which contains a transcript of a proceeding that Johnson argues shows that Winslow perjured herself. On the contrary, all the transcript shows is that Johnson's state counsel argued during that proceeding that Winslow had perjured herself before the state grand jury, had hired an attorney for this reason, and that she had falsely identified Johnson as the assailant due to a pre-existing grievance. The state refuted all of these claims.

It was not only reasonable for Johnson's federal trial counsel to opt not to use this transcript, but Johnson cannot show that this decision prejudiced him in any way, since the transcript is evidence of nothing more than his state counsel's apparent theory of the case at the time. *See Strickland*, 466 U.S. at 687-88, 693-94.

**B.     Actual Innocence**

Next, Johnson makes claims of actual innocence based on: (i) alleged admissions by an individual named Dexter Isaac ("Isaac") that he committed the crimes of which Johnson was convicted; (ii) Winslow's alleged false testimony discussed above, and (iii) an alleged admission by Spurgeon that Johnson was not the assailant of the crimes.

   *i.     Isaac's Statements*

5

In support of his claim that Isaac is the true perpetrator of his crimes, Johnson submits: (i) four signed affidavits from 2000 and 2012 from individuals who were incarcerated with Isaac stating that Isaac took credit for the crimes; (ii) the transcript of a podcast interview with Isaac in which he claims he committed the crimes; (iii) and an alleged Drug Enforcement Agency ("DEA") report that reflects exculpatory statements allegedly made by Isaac.

As with his ineffective assistance of counsel claims, Johnson's actual innocence claims are not timely. Johnson has been aware of Isaac's statements since 2000 when the first of the affidavits was executed; the government informed Johnson of potentially exculpatory statements made by Isaac in 2012. Yet, Johnson first argued actual innocence based on Isaac's statements in his supplemental briefing to the Court in June 2020, several years after the one-year statute of limitations had expired.

Had Johnson's claims been timely, they would next face a procedural bar. Freestanding claims of actual innocence, such as Johnson's, are generally not cognizable under § 2255, since they do not alone present a constitutional violation. *See Hyman v. Brown*, 927 F.3d 639, 656 n.20 (2d Cir. 2019) ("Actual innocence is 'not itself a constitutional claim'—except perhaps when raised in the context of an Eighth Amendment challenge to a capital sentence." (quoting *Schlup v. Delo*, 513 U.S. 298, 315 (1995)). However, courts in this Circuit have addressed actual innocence claims on the merits, assuming arguendo that they are cognizable, though they are typically rejected due to the "extremely high" bar that must be surpassed to overturn a conviction. *See Sweeney v. Laffin*, 2017 WL 4342138, at *7 (S.D.N.Y. Sept. 28, 2017) ("[E]ven if a freestanding actual

6

innocence claim could warrant habeas relief, Petitioner has failed to make such a showing because the threshold for any hypothetical freestanding innocence claim [i]s 'extraordinarily high'") (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). Specifically, Johnson must be able to show that there exists newly discovered evidence which is "sufficiently credible and compelling to allow a federal court to conclude that 'more likely than not, in light of the new evidence, no reasonable juror would find petitioner guilty beyond a reasonable doubt.'" *Hyman*, 927 F.3d at 657 (quoting *House v. Bell*, 547 U.S. 518, 538) (2006) (alterations omitted)).

Thus, the Court addresses the merits of Johnson's actual innocence claims assuming arguendo that they are cognizable, but finds that they do not reach the extraordinarily high bar required. All of the evidence of Isaac being the true perpetrator of Johnson's crimes are based on Isaac's own statements to others and to the media. Isaac is currently serving a life sentence for federal convictions in this district for murder-for-hire, witness tampering, and Hobbs Act robbery, among other things. Facing a life behind bars, Isaac has nothing to lose by claiming credit for these crimes, particularly since he did so only after determining that the statute of limitations had run. These circumstances lend to the conclusion that a reasonable jury likely would not find Isaac to be a credible witness.

The four affidavits that Johnson submits to the court contain statements purportedly made by Isaac to his former cellmates stating that Johnson was serving time for crimes that Isaac had committed. However, the affidavits do not contain specifics about which crimes Isaac was referring to when he made these statements. The statements are particularly inconclusive since Johnson was convicted of five separate counts, one of which—witness

7

tampering—involved several separate interactions with Winslow. To determine which crimes the affiants were referring to, the government conducted interviews of two of them in 2021. These interviews revealed that Isaac apparently was not referring to the robberies of Winslow and Spurgeon with his statements, but to the robbery and shooting of famous rapper Tupac Shakur ("Shakur"), an incident for which Isaac publicly claimed credit in 2011 after determining that the statute of limitations had run. However, Johnson was not convicted of this crime.

    Isaac's podcast interview likewise does not lend to a conclusion that he is credible. The interview centers on Isaac's alleged involvement in the robbery of Shakur. Isaac disparages Johnson and tells the interviewer that Johnson had bragged about robbing Shakur, but that he was not actually present at the incident and was instead "faking"—claiming credit for crimes he did not commit. Petitioner's Supp. Mot. to Vacate, Ex. 1 at 2. Regardless, this is not a crime that Johnson was convicted of, so Isaac's statements about it on a podcast are irrelevant.

    Still, to further investigate his statements, the government interviewed Isaac in May 2021. Isaac reiterated his dislike of Johnson, who was housed at the same facility as him for approximately two years beginning in 2000, because he allegedly took credit for the robbery of Shakur when Isaac was the perpetrator. During this interview, Isaac stated that his own robbery crew had conducted the robberies of Winslow and Spurgeon. Isaac's account of these robberies, in which he states that he never entered the apartments that were robbed, contains inconsistencies with the account relayed by Winslow at trial—which the jury credited. Isaac also told the government that when he learned that four former cellmates had

given affidavits about his statements, he obtained a weapon and planned to stab Johnson, but was convinced not to do so by other inmates. Isaac's apparent reaction to the news of the affidavits, which conflicts with his current stance of taking credit for the crimes, as well as the inconsistencies in his account, weigh toward finding that he is not credible. Certainly, his statements do not meet the high bar required to grant Johnson's motion. *See Hyman*, 927 F.3d at 657.

Finally, the government points out that the purported DEA report reflecting Isaac's claims contains several indicia that it is fraudulent. The DEA has no records of the report, no record of the file that the report states it is filed under, and the report's formatting does not comport with DEA practice. The government also relays that Johnson's counsel stated that the source of the report was a social media website. Given these indicia of unreliability, it is unlikely that a reasonable jury would acquit Johnson based on this evidence—particularly because the substantive contents of the report are again statements made by Isaac.

    ii.    *Winslow's Alleged False Testimony*

Johnson argues that the contents of the Kings County File discussed above evidence his innocence. Again, this claim is untimely since the file came into Johnson's possession in 2018. *See* 28 U.S.C. § 2255(f)(4). Had it been timely, it would still fail for reasons already discussed—the file merely shows that Johnson's state counsel *argued* that Winslow perjured herself, not that she actually perjured herself.

    iii.    *Spurgeon's Statements*

Lastly, Johnson makes a claim of innocence based on a 2003 affidavit from a former federal inmate stating that Spurgeon told him that one of the robberies Johnson was convicted of was staged by a friend of Winslow. Because the affidavit was executed in 2003 and Johnson does not claim that it came into his possession within a year of bringing his motion, this claim is also untimely. *See* 28 U.S.C. § 2255(f)(4).

Had this claim been timely, the affidavit would still fail reach the high bar required to show innocence at this stage. However, the single sentence contained in the affidavit that contradicts Spurgeon's testimony—stating that the robbery was staged by Winslow's friend—does not go further to include any detail or other indicia of credibility. It is also based on hearsay. For these reasons, the affidavit would fail to meet the "credible and compelling" standard required to prevail on this type of claim. *Hyman*, 927 F.3d at 657.

C.  *Johnson v. United States, et al.*

Johnson also argues that the Supreme Court's finding in *Johnson*—that the residual clause of the ACCA that defines "violent felony" as any felony that "involves conduct that presents a serious potential risk of physical injury to another" was unconstitutionally vague—along with its progeny, invalidates his mandatory life sentences on counts one and seven under the Act.[2] 18 U.S.C. § 924(e)(2)(B)(ii); *see* 576 U.S. at 597. The Court need not reach the merits of this question because Johnson was sentenced to five concurrent life sentences, only two of which are challenged by this vagueness argument.[3] *See Al-'Owhali v.*

---

[2] Count one is Hobbs Act robbery conspiracy and count seven is attempted Hobbs Act robbery.
[3] Johnson's life sentences on counts two and eight for narcotics trafficking were discretionary.

10

*United States*, 36 F.4th 461, 466 (2d Cir. 2022) ("Under the concurrent sentence doctrine, a court may decline to consider a challenge to a conviction for which an appellant's sentence runs concurrently with that for another, valid conviction."). Because the Court has already decided that the collateral attacks which would affect all of Johnson's convictions fail, it need not decide whether his mandatory life sentences would be invalidated by *Johnson* and its progeny since his discretionary life sentences would remain undisturbed.

Still, the Court would find that the holdings of *Johnson*, *Dimaya*, *Davis*, and *Taylor*, which all found similar residual or elements clauses of different statutes defining violent felonies to be unconstitutionally vague, would not affect Johnson's convictions. *See* 576 U.S. at 597; *Sessions v. Dimaya*, 138 S. Ct. 1204, 1207 (2018); *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019); 142 S. Ct. 2015, 2025-26. Courts in this Circuit have found, in line with the Supreme Court's guidance in these holdings, that the residual clause of § 3559(c)(2)(F)(ii) is unconstitutionally vague. *See Suggs v. United States*, 2023 WL 2712594, at *4 (D. Conn. Mar. 30, 2023). However, § 3559(c)(2)(F) contains an enumerated offense clause, § 3559(c)(2)(F)(i), which was left untouched by these holdings. This defines a "serious violent felony" as a "Federal or State offense . . . consisting of . . . robbery (as described in section 2111, 2113, or 2118); . . . or attempt, conspiracy, or solicitation to commit any of the above offenses." 18 U.S.C. § 3559(c)(2)(F)(i). Courts in this Circuit have found that Hobbs Act robbery falls within the definition of robbery under this clause. *See Suggs*, 2023 WL 2712594, at *4 n.4. Because this clause also explicitly covers attempt and conspiracy to commit any of the enumerated offenses, Johnson's conspiracy to commit

Hobbs Act robbery and attempted Hobbs Act robbery convictions are squarely covered by this clause. Therefore, Johnson's vagueness argument fails.

### D.     Rehabilitation and Age

Finally, Johnson argues that the Court should vacate his sentence due to his age at the time of his predicate offenses and because he is now rehabilitated. During his approximately 27 years of incarceration, Johnson has received over 100 certificates for completing various programs and courses spanning a wide variety of topics, such as corporate law, parenting, the impact of crime on victims, psychology, economics, photography, computer skills, and mathematics, among others. He has worked as a suicide watch companion, served as a peer mentor, helped form a support group for inmates serving life sentences, and was elected by his fellow inmates as a leader of an inmate organization. He was noted by staff at his facility to be a confident leader who is able to de-escalate violent situations, and he took a course on peer mediation to that end. Johnson even received a letter of commendation from the warden of his facility for his exceptional commitment to participating in programming and recruiting other inmates to do the same: "[Johnson has] modeled exceptional behavior which includes leadership, vision and a tremendous commitment to self-improvement." Petitioner's Mot. to Vacate, Ex. K at 135.

Johnson can be said to be nothing other than a model inmate. Still, even with such exemplary behavior while incarcerated, rehabilitation is not a cognizable basis for relief under § 2255. *Sinanan v. United States*, 2005 WL 396384, at *6 (E.D.N.Y. Feb. 11, 2005) ("Post-conviction rehabilitation is not among the grounds for relief provided by § 2255, as it does not indicate any constitutional error, lack of jurisdiction, or error of law or fact.").

Rehabilitation may be considered along with other factors on a motion for compassionate release under 18 U.S.C. § 3582(c), *see United States v. Russo* --F. Supp. 3d --, 2022 WL 17247005, at *5 (E.D.N.Y. Nov. 28, 2022); *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020).

The same is true of a defendant's age at the time of the offense conduct. For the purposes of habeas relief, the uncontested fact that Johnson was over the age of 18 at the time of his convictions defeats any argument that a mandatory life sentence was too severe due to his age. *See United States v. Sierra*, 933 F.3d 95, 97 (2d Cir. 2019) ("Since the Supreme Court has chosen to draw the constitutional line at the age of 18 for mandatory minimum life sentences, the defendants' age-based Eighth Amendment challenges to their sentences must fail." (citing *Miller v. Alabama*, 567 U.S. 460, 465 (2012)). However, a defendant's age at the time of his offense conduct can be one of the grounds for compassionate relief. *See United States v. Birkett*, --F. Supp. 3d--, 2023 WL 4274683, at *4 (E.D.N.Y. June 29, 2023) (granting a sentence reduction under the compassionate release statute based in part on the defendant's young age at the time he committed his crimes of conviction); *United States v. Ramsay*, 538 F. Supp. 3d 407, 423 (S.D.N.Y. 2021).

## CONCLUSION

Johnson's § 2255 motion is **DENIED**. Because the motion does not make a substantial showing of the denial of a federal constitutional right, a certificate of appealability with not issue. See 28 U.S.C. § 2253(c).

**SO ORDERED.**

  /S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York

July 24, 2023