UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

WALTER JOHNSON,

                    Defendant.

**MEMORANDUM AND ORDER**
Case No. 96-CR-932 (FB)

*For the Government:*
BREON PEACE
AMANDA SHAMI
U.S. Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

*For the Defendant:*
MIA EISNER-GRYNBERG
Federal Defenders of New York
One Pierrepont Plaza, 16th Floor
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

Pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), Walter Johnson ("Johnson") moves for a sentence reduction and immediate release. For the following reasons, his petition is GRANTED and his sentence reduced to time served.

As of this October 24, Johnson will have been in jail for 28 years because of the sentences I imposed in 1997. He is now 61 years old. I sentenced him to three mandatory terms of life in prison under the "Three Strikes" provision of the Violent Crime Control and Law Enforcement Act, which had recently been enacted by Congress. *See* 18 U.S.C. § 3559(c). I also exercised my discretion to sentence him to two additional life terms for two cocaine-based convictions because I

1

considered acquitted conduct. I said at the time, "Mr. Johnson, you are a classic example of a person [who] has to be incapacitated so society is protected against you. You have a violent history. You've spent a lot of time in jail, And, when you've been out of jail, you have visited all sorts of harm to the community." Sentencing Tr. 43:15–20, ECF No. 140.

Now, I am ordering his release. With the First Step Act, Congress has given prisoners, including those such as Johnson who are serving mandatory life sentences, the opportunity to petition district courts for a sentence reduction for extraordinary and compelling reasons, provided they also satisfy the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); 18 U.S.C. § 3582(c)(1)(a)(ii).[1]

I now believe that my sentences, though lawfully rendered, were excessively harsh. The First Step Act allows me to reconsider a previously imposed sentence and provide a necessary corrective if warranted. Such is this case. Multiple factors combine to warrant Johnson's release.

## BACKGROUND

In 1996, the government indicted Johnson for twelve crimes. A year later, after a lengthy trial, a jury convicted him of seven: Count 1, Hobbs Act conspiracy;

---

[1] The defendant must also have exhausted his administrative remedy. *See Keitt*, 21 F.4th at 71 (2d Cir. 2021). Johnson has satisfied this exhaustion requirement, and the Government does not contend otherwise.

Count 2, conspiracy to possess with intent to distribute cocaine; Count 3, conspiracy to commit witness tampering; Count 7, attempt to commit Hobbs Act robbery on April 21, 1995; Count 8, attempt to possess cocaine with intent to distribute on April 21, 1995; Count 9, witness tampering on April 21, 1995, and Count 11, witness tampering on February 5, 1996.

It acquitted him of the other five: Count 4, attempt to commit Hobbs Act robbery on March 15, 1995; Count 5, attempt to possess cocaine with intent to distribute on March 15, 1995; Count 6, intentional use and carry of a firearm during a crime of violence and drug trafficking crime on March 15, 1995; Count 10, use and carry of a firearm in relation to a crime of violence and drug trafficking on April 21, 1995, and Count 12, use and carry of a firearm in relation to a crime of violence and drug trafficking on February 5, 1996.

 The witness tampering conspiracy count, Count 3, was predicated on three overt acts: one for a robbery on April 21, 1995, one for an alleged rape on that date, and the last for a robbery committed on February 5, 1996. The jury found him not guilty of the April 21 rape and the February 5 robbery, but guilty of the April 21 robbery; hence, he was found guilty of Count 3 based on this singular overt act.

The rape scenario was based on the trial testimony of Crystal Winslow, who testified that on April 21, Johnson and two other men, wielding guns, entered her mother's apartment and ordered her and her mother to the floor. The perpetrators

3

then searched the apartment for drugs and money. She was subsequently bound with duct tape and brought into the bedroom. Winslow testified that Johnson then asked her "where was the 30 [kilos] and the drugs and money, and wanted to know where was my watch, my Rolex watch, and my jewelry." *See United States v. Johnson*, 96-CR-932, 1998 WL 259920, at *1 (E.D.N.Y. May 20, 1998). After she denied having them, she testified that Johnson and one of the other perpetrators then raped and sodomized her. *See id.* at *1–2.

After the trial, I granted that part of the defendant's Rule 29 motion seeking dismissal of Counts 3 and 9—two of the three witness tampering counts—because "there was insufficient evidence presented to the jury from which it could infer that the April 21, 1995, robbery constituted an act in furtherance of witness tampering." *Id.* at *6. In respect to Count 3, dismissal was warranted, therefore, because there no longer were any overt acts extant to support the conspiracy to commit witness tampering.

I sentenced Johnson to five life sentences. I held that three were mandated under the Three Strikes law because they entailed either the use of a firearm or the threat of physical harm; thus, under the statute, they qualified as "serious violent felon[ies]." 18 U.S.C. § 3559(c)(1). The government had established that the Three Strikes law applied because Johnson had previously been convicted of two prior

4

robberies when he was 19 and 20 years old, and an attempted robbery at a later date.

The other two life sentences were based on the two cocaine convictions, which carried terms of 10 to life, but gave me the discretion to impose life sentences. I chose to exercise that discretion. Although I did not articulate the reason for doing that on the record, I considered the totality of Johnson's criminal conduct, including his participation in the rape of Crystal Winslow—notwithstanding that the jury acquitted him of that conduct—as well as other acquitted conduct.

The Second Circuit affirmed my judgment of conviction. *See United States v. Johnson*, 181 F.3d 83 (2d Cir. 1999). Johnson's appeal was limited to insufficiency of evidence grounds, denial of a fair trial because of my refusal to give a multiple conspiracy charge, and "that the Three Strikes statute is unconstitutional." *Id.* The court rejected each contention. Notably, it acknowledged that it was not plain error for me not to *sua sponte* find the statute unconstitutional because "[t]here have been no decisions in this circuit on this issue and the other circuits have only begun to consider it." *Id.*[2]

---

[2] Circuit courts have since rejected challenges to the constitutionality of the federal Three Strikes provision, and the Supreme Court has declined to hear appeals from those decisions. *See United States v. Kaluna*, 192 F.3d 1188 (9th Cir.1999) (en banc) (rejecting constitutional challenges to federal three strikes law), *cert. denied*, 529 U.S. 1056 (2000); *United States v. Rusco*, 123 F.3d 222 (5th Cir. 1997), *cert. denied*, 522 U.S. 1083 (1998); *United States v. Washington*, 109 F.3d 335 (7th Cir. 1997), *cert. denied*, 522 U.S. 847 (1997). The Supreme Court has since also upheld

In making the requisite guidelines calculations at the sentence, the Hobbs Act robbery counts, Counts 1 and 7, were grouped together. I imposed a five-level enhancement because I determined that the defendant brandished a gun, even though he was acquitted of the firearm charges. I also imposed a four-level enhancement because I held him accountable for the rape even though he was acquitted of that overt act. If I had not been required to impose mandatory life sentences because of the Three Strikes law, and had not considered acquitted conduct, the total offense level for these crimes would have been 24. Since Johnson was admittedly in Criminal History category VI, the guidelines sentencing range would have been 100–125 months.

As for the cocaine counts, Counts 2 and 8, they were also grouped together. The base offense level was 34; today it would be 32 because of a 2014 Sentencing Commission change. I arrived at a total offense level of 38, but this included a two-level enhancement for possession of a firearm, notwithstanding that Johnson had been acquitted of all the firearm charges. Using the guidelines at that time, if I had not imposed the two-level enhancement, the total offense level would have been 36 without the acquitted conduct enhancement, which would have yielded a

---

the constitutionality of California's Three Strikes law against an Eighth Amendment challenge. *See Ewing v. California*, 538 U.S. 11 (2003). Circuit courts have in turn cited *Ewing* in upholding the federal Three Strikes provision against constitutional challenges. *See, e.g.*, *United States v. James*, 276 Fed. Appx. 301 (4th Cir. 2008) (per curiam).

sentencing range of 324–405 months. Johnson has already served a sentence in this range. He has been in custody since October 24, 1996, approximately 336 months. Accounting for the 2014 Sentencing Commission changes, his offense level on these counts would be 34, yielding a guidelines sentence of 262–327 months, which he has already exceeded.

Johnson's fifth conviction, on Count 11, for witness tampering on February 5, 1995, resulted in a total offense level of 18, and was inconsequential for sentencing purposes.

I have taken pains to explain the details of my sentencing calculations to make clear that if not for the mandatory life sentences required by the Three Strikes law and my consideration of acquitted conduct, Johnson could be a free man today even if I had sentenced him above the minimum 324 months for the cocaine convictions.

## DISCUSSION

### I. Extraordinary and Compelling Circumstances

The Court has broad discretion to consider the "full slate" of extraordinary or compelling reasons that could support Johnson's motion for compassionate release under the First Step Act. *See United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). The U.S. Sentencing Commission has identified multiple extraordinary and compelling reasons—such as medical circumstances, age, family

7

circumstances, or abuse—that may warrant a sentence reduction, in addition to providing a catchall provision for "any other circumstance or combination of circumstances, that, when considered by themselves or together" with other identified factors are similar in gravity. *See* U.S.S.G. § 1B1.13 (b)(1)–(6).

"The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Brooker*, 976 F.3d at 237–38 (quoting 28 U.S.C. § 994(t)). Thus, the Court may find that "rehabilitation-plus," meaning rehabilitation in conjunction with other appropriate factors, supports a finding of extraordinary and compelling reasons. *See United States v. Tavarez*, ___ F. Supp 4th ___, No. 08-CR-242, 2024 WL 4043740, at *5 (E.D.N.Y. Sept. 4, 2024) (collecting cases in which Second Circuit district courts found a combination of rehabilitation and other factors warranted a sentence reduction); *see also United States v. Snype*, 683 F. Supp. 3d 351, 364 (S.D.N.Y. 2023) (finding that where "none of the circumstances . . . would alone permit a sentence reduction," a "confluence of all of these circumstances" may do so); *United States v. Russo*, 643 F. Supp. 3d 325, 332, 333, 336 (E.D.N.Y. 2022) (finding a "combination" of factors, including medical circumstance and rehabilitation, may constitute a compelling reason for sentence reduction); *United States v. Phillips*, 469 F. Supp.

3d 180, 184–85 (S.D.N.Y. 2020) (finding a "totality of the circumstances" warranted sentence reduction).

## A. The Three Strikes Statute

Although my original sentence under the mandatory provisions of the Three Strike law was, and still would be, lawful, district courts in the Second Circuit and elsewhere have held that this does not preclude granting compassionate relief. *See Snype*, 683 F. Supp. 3d at 360–61 (granting reduced sentence despite the mandatory imposition of an original life sentence under the Three Strikes statute); *United States v. Suggs*, No. 99-CR-244, 2021 WL 2661874 (D. Conn. June 28, 2021) (same); *see also United States v. Carroll*, 98-CR-351, 2020 WL 8024485 (E.D. Mo. Sept. 14, 2020) (same).

Johnson received mandatory sentences under the Three Strikes provision because the government filed a felony information based on his prior convictions for "serious violent felonies." 18 U.S.C. § 3559(c)(1)(A). It is doubtful it would do so today. He is, apparently, one of only two people serving a mandatory life sentence under this provision in the Second Circuit.[3] Additionally, Johnson

---

[3] In 2021, Judge Arterton in the District of Connecticut, considering a separate compassionate release petition from a defendant serving a mandatory life sentence, found that "[i]n the Second Circuit generally, there are only three other individuals serving life sentences imposed pursuant to § 3559(c) and § 851" in addition to the defendant to whom she granted release. *United States v. Suggs*, 99-CR-244, 2021 WL 2661874 at *9 (D. Conn. June 28, 2021). Johnson is one of these remaining three, another of whom was granted release in 2023. *See United States v. Snype*, 683 F. Supp. 3d 351 (S.D.N.Y. 2023).

committed two of these underlying crimes—two robberies—when he was 19 and 20 years old. "[O]ne cannot ignore the significant role that, because of the 'three strikes' law, [his] youthful transgressions played in his sentencing." *Snype*, 683 F. Supp. 3d at 360. There has been "increased judicial sensitivity, driven by substantial research, to the role that a criminal defendant's adolescence should play in sentencing." *Id.* (citing *Roper v. Simmons*, 543 U.S. 551, 569-70 (2005)).

With this growing sensitivity comes a greater appreciation of the harshness of a mandatory life sentence premised, like Johnson's, on crimes committed as a young man. The Court may properly consider the harshness of this type of mandatory life sentence under the Three Strikes provision in evaluating the wisdom of a sentence reduction in light of all of a defendant's individual circumstances. *See Snype*, 683 F. Supp. 3d at 360–61; U.S.S.G. § 1B1.13 (b)(6). In any event, it is vanishingly rare today that prosecutors in this circuit file the requisite felony information triggering a mandatory life sentence under the Three Strikes law. *See Suggs*, 2021 WL 2661874, at *9 (surveying Three Strikes sentences in the Second Circuit).[4]

---

[4] Today, "three strikes and you're out" is more synonymous with Walter Johnson's namesake of baseball yore.

### B. Acquitted Conduct

The Government, opposing Johnson's petition, notes that he received not one but five concurrent life sentences, and that two were predicated on the exercise of my discretion. The Government points to evidence that Johnson brutalized Crystal Winslow, raping and sodomizing her, and consigning her to a "living hell." *See* Gov't Letter in Opp'n, at 12. But the jury, in assessing her credibility, acquitted Johnson of raping her. Notwithstanding, I had a different view of her credibility, and therefore considered this acquitted conduct in imposing the two discretionary life sentences.[5]

The practice of sentencing defendants based on acquitted conduct is now firmly disfavored. *See McClinton v. United States*, 143 S. Ct. 2400, 2401 (2023) (Sotomayor, J., "respecting the denial of certiorari").[6] "As many jurists have noted, the use of acquitted conduct to increase a defendant's Sentencing Guidelines range raises important questions that go to the fairness and perceived fairness of the criminal justice system." *Id.* at 2401 & n.2 (collecting cases).[7]  In recently

---

[5] Many years later, in 2011, I decided in another case that I would not consider acquitted conduct because "the case turned on the credibility of the witnesses." Judge Frederic Block, *A Second Chance: A Federal Judge Decides Who Deserves It* 108 (2024).

[6] Whether the same holds true for uncharged conduct is less clear. *See, e.g.*, *United States v. Fitch*, 659 F.3d 788 (9th Cir. 2011) (affirming upward sentencing departure based on uncharged conduct).

[7] Legal scholars have also extensively criticized the practice of increasing the length of a defendant's sentence on the basis of acquitted conduct. *See, e.g.*, Erwin Chemerinsky, *Making Sense of* Aprendi *and its Progeny*, 37 McGeorge L. Rev. 531, 537 (2006) ("This is obviously inconsistent with the principle that it is wrong to convict a person of one crime and then to

promulgated sentencing guideline amendments, the U.S. Sentencing Commission explained that acquitted conduct ought not be considered in calculating a defendant's guideline range. *See* U.S. SENTENCING COMM'N, AMENDMENTS TO THE SENTENCING GUIDELINES (Apr. 30, 2024) (amended § 1B1.3: "ACQUITTED CONDUCT. — Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction").[8]

Notably, in *McClinton*, Justice Sotomayor cautioned that "the Court's denial of certiorari should not be misinterpreted" because the "Sentencing Commission, which is responsible for the Sentencing Guidelines, has announced that it will resolve questions around acquitted-conduct sentencing in the coming year," and "[i]f the Commission does not act expeditiously or chooses not to act," the Court "may need to take up the constitutional issues presented." 143 S. Ct. at 2403. Justices Kavanaugh, Gorsuch and Barrett collectively agreed: "The use of acquitted conduct to alter a defendant's Sentencing Guidelines range raises important questions." *Id.* But "[i]t is appropriate for this Court to wait for the

---

sentence them for another."); Eang Ngov, *Judicial Nullification of Juries: Use of Acquitted Conduct at Sentencing*, 76 Tenn. L. Rev. 235, 291 (2009) ("Consideration of acquitted conduct means a death sentence for innocence."); Barry L. Johnson, *The Puzzling Persistence of Acquitted Conduct in Federal Sentencing, and What Can Be Done About It*, 49 Suffolk L. Rev. 1, 4 (2016) ("[O]n balance, use of acquitted conduct is a poor sentencing practice, inconsistent with a number of important sentencing policies and process interests.").

[8] The proposed amendments to the sentencing guidelines have been submitted to Congress for a 180-day review period and are slated to take effect on November 1, 2024.

Sentencing Commission's determination before this Court decides whether to grant certiorari in a case involving the use of acquitted conduct." *Id.*

The acquitted conduct issue has yet to be presented to the Supreme Court, but the Sentencing Commission's resolution of the issue raises serious doubts in my mind whether I should have considered the multiple instances of acquitted conduct in Johnson's case in sentencing him to life.

### C. Excessive Length

The Second Circuit has made clear that the Court may consider the excessive length of a sentence as a factor among the "full slate" of circumstances supporting a finding that there exists an extraordinary and compelling reason for compassionate release. *See Brooker*, 976 F.3d at 231 (rejecting the district court's view that the excessive length of a sentence "cannot qualify as an extraordinary and compelling circumstance"); *United States v. Carlton*, 05-CR-796, 2022 WL 17104061, at *3 (S.D.N.Y. Nov. 22, 2022) (citing *Brooker*, 976 F.3d at 237) ("In resolving a compassionate release motion, district courts are permitted to consider whether the relative harshness of a sentence constitutes an 'extraordinary and compelling reason' favoring release."); *see also United States v. Amerson*, No. 05-CR-0301, 2023 WL 4373589, at *7 (E.D.N.Y. July 6, 2023) (finding the "excessive length" of defendant's sentence as compared to contemporary sentences for similar conduct a factor supporting compassionate release); *United States v. Hall*, No. 19-

CR-74, 2024 WL 3718341, at *4 (D. Conn. Aug. 8, 2024) ("[T]he *Brooker* decision suggests that district courts in this Circuit have wide discretion in considering whether a lengthy sentence, alone or in combination with other factors, is sufficient to warrant a reduction in sentence.").

Considering Johnson's life sentences from my current vantage point, in the context of increasing judicial sensitivity to mandatory Three Strikes sentences based on youthful transgressions and skepticism toward the use of acquitted conduct in sentencing, these sentences appear excessively long and harsh. I find this to be one of the factors worthy of consideration under the "extraordinary and compelling" compassionate release prong of the First Step Act.

### D. Rehabilitation

Johnson's record of rehabilitation is exemplary. In more than 28 years of incarceration, he has kept a perfectly clean record, with zero disciplinary infractions. In a letter of commendation, the warden of FCI Otisville lauded his "outstanding responsibility, support, and diligence in keeping a positive relationship" with herself and the prison's executive staff. Def. Suppl. Letter in Supp. of Mot. for Reduction of Sentence, Ex. D. The warden likewise praised his "exceptional commitment to participating in programming and recruiting other inmates to do the same." *Id.*

14

Johnson has also supplied numerous letters and reports from other BOP officials that are similarly laudatory. *Id.* In 2013, he began serving on the FCI Otisville Reentry Council, despite lacking his own prospects for reentry. *Id.* He has served as a suicide watch volunteer. *Id.* He has received more than 100 certificates for completing various courses. *See* Def. Suppl. Letter in Supp. of Mot. for Reduction of Sentence, Ex. C. As I commented last year in denying Johnson's petition under 28 U.S.C. § 2255: "Johnson can be said to be nothing other than a model inmate." *United States v. Johnson*, 96-CR-932, 2023 WL 4707853, at *6 (E.D.N.Y. July 24, 2023).

The Government does not dispute—and acknowledges—Johnson's stellar rehabilitation. It correctly observes that, however sparkling Johnson's record may be, it cannot "alone" justify a compassionate release. *See* Gov. Opp'n to Mot. for Reduction of Sentence, at 12–13. It does not dispute, however, that "rehabilitation-plus," may suffice when rehabilitation is considered in conjunction with other appropriate factors. *See Tavarez*, 2024 WL 4043740, at *5.

The Government points to several instances in which the Second Circuit has affirmed denials of compassionate release after a defendant presented evidence of extensive rehabilitation. *See United States v. Robinson*, No. 21-CR-1865, 2022 WL 2204126, at *3 (2d Cir. June 21, 2022); *United States v. Garcia*, No. 21-CR-1181, 2022 WL 2154675, at *2 (2d Cir. June 15, 2022*); United States v. Reyes*, No. 20-

15

3285, 2022 WL 1669388, at *1 (2d Cir. May 26, 2022). But these do not

undermine the essential point. In some cases, such as those cited, a defendant's

rehabilitation, even when combined with other factors, may not have added up to

an extraordinary and compelling reason for release. Here, it does.

### E. Victim Statement

Subsequent to Johnson's motion, the Court received a letter from Crystal

Winslow, the primary victim of Johnson's crimes. She wrote:

> While I understand the severity of his crimes and their profound impact on me, I have also come to a place of forgiveness . . . His continued incarceration serves as a constant reminder of a painful past, hindering my ability to fully embrace the present. I believe that Mr. Johnson has served a substantial sentence and has had ample time to reflect on his actions. Given the opportunity and with the proper support, he has the potential to become a productive and positive member of society.

Letter from Crystal Winslow (Sept. 16, 2024), ECF No. 199.

While considerable attention has been focused on the harsh consequences of

mandatory minimums and Three Strikes provisions, "the effect of victim impact

statements on excessive prison sentences has been largely overlooked." Hugh M.

Mundy, *Forgiven, Forgotten? Rethinking Victim Impact Statements for an Era of

Decarceration*, 68 UCLA L. Rev. Disc. 302, 308 (2020). Although the subjective

consequences of victim impact statements on sentencing is a matter of ongoing

speculation and uncertainty,[9] I believe consideration of the victim's statement is appropriate.

The drafters of the First Step Act were not oblivious to the relevancy of victim impacts. The Act, for instance, allows prisoners to earn time credits by participating in recidivism reduction programs, a category that encompasses restorative justice and "victim impact" education. 18 U.S.C. § 3635(3)(C)(xii). District courts throughout the country have considered victim impact statements as a factor in denying a defendant's First Step Act petition. *See, e.g.*, *United States v. Aiello*, 05-CR-60, 2024 WL 665944, at *3 (E.D.N.Y. Feb. 16, 2024) (citing victim impact statement in denying petition); *United States v. Wallace*, 02-CR-72, 2023 WL 8435979, at *7 (D. Conn. Dec. 5, 2023) (same); *see also United States v. Hockenberger*, 21-CR-140, 2023 WL 5955741, at *4 (S.D. Ohio Sept. 13, 2023) (same); *United States v. LeBoeuf*, 19-CR-209, 2023 WL 2456786, at *4 (N.D. Cal. Mar. 10, 2023) (same); *United States v. Hutchins*, No. 19-CR-22, 2023 WL

---

[9] *See* Maarten Kunst et al., *The Impact of Victim Impact Statements on Legal Decisions in Criminal Proceedings: A Systematic Review of the Literature Across Jurisdictions and Decision Types*, 56 Aggression & Violent Behavior 1, 8 (2021) ("Due to the low number of studies investigating the imposition of prison and non-custodial sentences, it could not be determined whether the proportion of studies finding a main or a null effect for [victim-impact statement] delivery varied by legal system, sample characteristics, or [victim-impact statement] presentation mode."). For an overview of some of the purported benefits of judicial consideration of victim impact statements, such as the provision of additional information, rehabilitative effect, and benefits for the victim, see, e.g., Paul G. Cassell, *In Defense of Victim Impact Statements*, 6 Ohio St. J. Crim. L. 611 (2009). For a converse description of some perceived problems with the practice, such as Constitutional concerns and unfairness to defendants, see, e.g., Kelly v. California, 550 U.S. 1020 (2008) (cert. denied) (Statement of Stevens, J.).

2394558, at *2 (W.D.N.C. Mar. 7, 2023) (same). Some district courts also afford the Government the opportunity to present victim impact statements before deciding a First Step Act petition. *See United States v. Smith*, No. 96-CR-96, 2024 WL 3598369, at *1 (D. Md. July 30, 2024) (noting the Government had been afforded the opportunity to supplement its submission with victim impact statements prior to a ruling on a First Step Act petition); *United States v. Ray*, No. 08-CR-117, 2024 WL 1604495, at *1 (D. Md. Apr. 11, 2024) (same).

Just as a court may properly consider such statements where they weigh against the reduction of a sentence, a court should likewise account for the inverse scenario, where a victim statement weighs in a defendant's favor and supports a finding of an extraordinary and compelling reason to reduce a prisoner's sentence.

The victim's statement here is in keeping with the First Step Act's call for restorative justice and victim-offender reconciliation. *See* 18 U.S.C. § 3635(3)(C). I therefore consider that statement as one among several factors combining to support my finding an extraordinary and compelling reason for Johnson's release.

### F. Health and Family Issues

Johnson also contends that his health, and his 86-year-old mother's health, is an extraordinary and compelling factor. Johnson suffers from numerous medical conditions associated with aging: hypertension, high cholesterol, obesity, sleep apnea, and a heart condition. *See* Def. Suppl. Letter in Supp. of Mot. for Reduction

18

of Sentence, Ex. G. District courts in this circuit have come to different, case-specific determinations as to whether these types of medical conditions warrant a reduced sentence under the First Step Act. *Compare, e.g.*, *United States v. Scparta*, 567 F. Supp. 3d 416, 427–28 (S.D.N.Y. 2020) (finding defendant's comparable conditions, in conjunction with COVID-19 risks, grounds for compassionate release), *and United States v. Delgado* 457 F. Supp. 3d 85, 90 (D. Conn. 2020) (same), *with United States v. Liounis*, 592 F. Supp. 3d 43, 46–47 (E.D.N.Y. 2022) (finding these conditions insufficient to warrant sentence reduction), *and United States v. Riter*, No. 18-CR-313, 202 WL 3428144, at *3 (S.D.N.Y. June 23, 2020) (same). Here, though I empathize with Johnson's condition, his ailments appear to be receiving proper treatment, and do not seem of the sort that would support a finding of an extraordinary and compelling reason for release.

The same holds with respect to his family circumstances. Johnson has an elderly mother, who has been battling cancer, which he says supports his petition. Although defendant's status as the "only available caregiver" may constitute an extraordinary and compelling circumstance, *see* U.S.S.G. § 1B1.13 (b)(3)(C), Johnson has not made such a showing, which would require him to provide an explanation and "several sources of evidence" that he was the only person available to care for her. *United States v. Sharma*, No. 19-CR-24, 2023 WL 4305054, at *3 (E.D.N.Y. June 30, 2023). Therefore, I do not consider Johnson's

19

health or family circumstances among the totality of circumstances supporting his release.

Nevertheless, I do find that the combination of Johnson's sentences under the outmoded Three Strikes provision, my consideration of acquitted conduct, the excessive length of his sentences, his impressive rehabilitation, and the victim impact statement, collectively satisfy the extraordinary and compelling prong. In any event, his extraordinary rehabilitation plus any of those factors would suffice.

## II. § 3553(a) Factors

Having found extraordinary and compelling reasons for Johnson's release, I must also evaluate and balance the factors set forth in 18 U.S.C. § 3553(a). *See Keitt*, 21 F.4th at 71. They include (i) the nature and circumstances of the offense, (ii) the history and characteristics of the defendant, (iii) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, (iv) the need to adequately deter criminal conduct, (v) the need to protect the public from the defendant, (vi) the need to provide the defendant with necessary rehabilitation, and (vii) the need to avoid unwarranted sentencing disparities among similar defendants.

Surely, the nature and circumstances of Johnson's offenses weigh against him, but if I had not considered acquitted conduct they would not be as poignant. The other factors weigh in Johnson's favor. Initially, as for "the need to provide the

20

defendant with necessary rehabilitation," his extraordinary rehabilitation while incarcerated is also a significant § 3553(a) factor. *See Pepper v. U.S.*, 562 U.S. 476, 491 (2011) ("[E]vidence of post[-]sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing.").

Although the seriousness of his offenses is not to be discounted, Johnson has already served a lengthier sentence than he would likely receive were he now sentenced for the crimes for which he was convicted, assuming the likelihood that the government would not pursue the disfavored mandatory Three Strikes life sentences for the crimes he committed during his youth.

But the most significant § 3553(a) factors are the need to "adequately deter criminal conduct" and "to protect the public from the defendant." In that respect. Crystal Winslow's victim impact statement gives me considerable comfort.

 Johnson is now 61 years old, and three decades removed from the conduct that led to his imprisonment. It is well-established that the likelihood of recidivism drops sharply with age. *See, e.g.*, Dep't of Just., Off. of the Inspector Gen., *Review of the Impact of an Aging Inmate Population on the Federal Bureau of Prisons*, at iii (May 6, 2015) (explaining "aging inmates are generally less of a public safety threat" and have a "significantly lower" recidivism rate). Thus, Johnson's comparatively advanced age is relevant to evaluating his characteristics and

likelihood of recidivism when weighing all the § 3553(a) factors. *See, e.g.*, *United States v. Miller*, 92-CR-91, 2024 WL 4107211, at *19 (E.D.N.Y. Sept. 6, 2024) (considering impact of age on recidivism and finding § 3553(a) factors support release in spite of defendant's violent and egregious criminal history); *United States v. Piggott*, No. 94-CR-417, 2022 WL 118632, at *3 (S.D.N.Y. Jan. 12, 2022) ("It is also well-established that recidivism decreases significantly with age.").

But the most compelling consideration in evaluating whether releasing Johnson would be inimical to deterring future criminal conduct by him and protecting the public are the recent statistics which have been compiled since the enactment of the First Step Act.

District judges throughout the country have granted 5,311 compassionate release motions from 2019 through the 3rd quarter of 2024. *See* U.S. Sentencing Comm'n, Compassionate Release Data Report, at Table 1 (Aug. 2024). As of January 28, 2024, the Bureau of Prisons has released 44,673 prisoners because of multiple First Step Act reforms. *See* U.S. Dep't of Just., First Step Act Annual Report, at 40 (June 2024). Remarkably, the recidivist rate for that group "stands at 9.7 percent compared to 46.2 percent for all people released from Bureau of Prisons facilities in 2018." Jessie Brenner & Stephanie Wylie, Brennan Ctr. for Just., *Analyzing the First Step Act's Impact on Criminal Justice* (Aug. 20, 2024) (reporting on DOJ data). Thus, "recidivism is 37 percent lower among people

22

released because of the First Step Act than among others leaving prison." Michael

Waldman, Brennan Ctr. for Just., *Data on Sentencing Reform Shows the First Step*

*Act Worked* (Dec. 19, 2023).

Although I cannot locate recidivist statistics for the 5,311 prisoners released

by the district court judges, it is fair to assume that they would be significantly

lower than the 9.7 percent released by the BOP since the standards for

compassionate release, requiring the showing of extraordinary and compelling

circumstances and satisfaction of the 3553(a) factors, are so stringent.

Notably, none of the prisoners I have released has become a recidivist. And

while there is always a risk of uncertainty and potential embarrassment for me if

Johnson were to now commit another crime—which is always an X factor

whenever a judge lets someone out of jail—I cannot let that be a basis for keeping

him incarcerated since he has clearly satisfied the rigorous requirements under the

First Step Act warranting his release.

## COMMENTARY

The First Step Act was an extraordinary piece of reform legislation that was

overwhelmingly enacted in 2018 by a bipartisan Congress. It passed the House by

a vote of 360-59, and the Senate by a vote of 87-12. Democratic senator Richard

Durbin of Illinois, who led the push in the Senate for passage of the bill, together

with Republican senators Charles Grassley of Iowa and Mike Lee of Utah,

23

commented: "I can't remember any bill that has this kind of support, left and right, liberal and conservative, Democrat and Republican." Nicholas Fandos, *Senate Passes Bipartisan Criminal Justice Bill*, N.Y. Times (Dec. 18, 2018).  And Justice Neil Gorsuch has written that the First Step Act "may be the most significant criminal justice reform bill in a generation." *Pulsifer v. United States*, 601 U.S. 124, 155 (2024) (Gorsuch, J., dissenting) (internal quotations omitted).

The purpose of the First Step Act was to address our mass incarceration problem by reducing the federal prison population where warranted. Our country has 4% of the world's population but 20% of its prisoners. *See* Peter Wagner & Wanda Bertram, Prison Pol'y Initiative, *"What Percent of the U.S. Is Incarcerated?" (And Other Ways to Measure Mass Incarceration)* (Jan. 16, 2020). On March 14, 2023, the Prison Policy Initiative, an independent research and national criminal justice reform advocacy organization, reported that "[at] least 113 million adults in the U.S. (roughly 45%) have a family member who has been incarcerated, and 79 million people have a criminal record, revealing the ripple effects of locking up millions of people every day." Prison Pol'y Initiative, *New Report Mass Incarceration: The Whole Pie 2023 Shows That as the Pandemic Subsides, Criminal Legal System Returning to "Business as Usual"* (Mar. 14, 2023).

But the federal prison population is only 10% of the country's roughly 2 million prisoners, and our mass incarceration problem cannot be effectively tackled unless the states enact comparable compassionate release legislation. *See* Judge Frederic Block, *A Second Chance*, at 177–198.[10]

The First Step Act has changed the federal sentencing landscape in the United States because district court judges, like me, can now reconsider a previously imposed sentence and let worthy prisoners out of jail before their original sentence date; even those, like Johnson, serving mandatory life sentences.

Thus, the statute not only gives worthy prisoners second chances, but also gives the country's sentencing judges second chances.

Just like prisoners who have evolved into better human beings during their lengthy periods of incarceration, judges also evolve with the passage of years on the bench. When I sentenced Johnson in 1997, I had been a judge for only two years. But judges gain insights that with the passage of time only can come with experience on the bench and their judicial maturation. Now, having been on the bench for almost thirty years, the First Step Act has given me a second chance to reconsider the sentences I imposed on Johnson 27 years ago. I will now also give him a second chance.

---

[10] I have strayed from my personal rule that a judge's opinions should strictly be confined to the facts and the law, and should avoid unrelated polemical comments, but there are exceptions to every rule.

25

**CONCLUSION**

The defendant's motion is granted. He is resentenced to time served, plus three years of supervised release. Accordingly, he shall forthwith be released from incarceration.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 16, 2024

26