UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| |
|---|
| UNITED STATES OF AMERICA, |
| Plaintiff, |
| -against- |
| WALTER JOHNSON, |
| Defendant. |

**MEMORANDUM AND ORDER**
Case No. 1:96-cr-00932-FB-1

*Appearances:*
*For the Government:*
AMANDA SHAMI
Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, NY 1120

*For the Defendant:*
WALTER JOHNSON, *pro se*
16 14th St Apt. 3R
Derby, CT 06418

**BLOCK, Senior District Judge:**

Defendant Walter Johnson moves to terminate his supervised release. Having considered the relevant statutory and Sentencing Guidelines factors, the Court concludes that Johnson's motion should be **GRANTED**.

**I.**

In 1997, following a jury trial, Johnson was convicted of seven crimes: Hobbs Act conspiracy; conspiracy to possess with intent to distribute cocaine; conspiracy to commit witness tampering; attempt to commit Hobbs Act robbery; attempt to possess cocaine with intent to distribute; and two counts of witness tampering. *United States v. Johnson*, 754 F. Supp. 3d 305, 308 (E.D.N.Y. 2024). I

sentenced him to three mandatory life terms in prison under the "Three Strikes" provision of the Violent Crime Control and Law Enforcement Act, 18 U.S.C. § 3559(c), as well as an additional two life terms which I imposed, in my discretion, based on acquitted conduct. *Johnson*, 754 F. Supp. 3d at 308.

In 2018, Congress enacted the First Step Act, 18 U.S.C. § 3582(c)(1)(A), which empowered district courts to grant motions for a sentence reduction or release for extraordinary and compelling reasons. *Johnson*, 754 F. Supp. 3d at 308. In 2024, after having served 28 years of his sentence, Johnson moved for his release pursuant to the First Step Act, which I granted. *Id*.

In assessing Johnson's motion, I concluded that, although the sentence I imposed was lawful, it was excessively harsh. *Id*. I applied the Sentencing Guidelines factors, U.S.S.G. § 1B1.13 (b)(1)–(6) and determined that "the combination of Johnson's sentences under the outmoded Three Strikes provision, my consideration of acquitted conduct, the excessive length of his sentences, his impressive rehabilitation, and the victim impact statement, collectively satisfy the extraordinary and compelling prong." *Id*. at 316. I also concluded that the 18 U.S.C. § 3553(a) factors supported his motion. I resentenced Johnson to time served and three years of supervised release. *Id*. at 318.

Having completed over a year of supervised release, Johnson now requests that his supervision be terminated.

## II.

In *United States v. Morgan,* 24-cr-371 (E.D.N.Y. Feb. 12, 2026), I recently reviewed the landscape of supervised release and motions for termination under new Sentencing Guidelines Section 5D1.4. I explained that the purpose of supervised release is not to punish the defendant but to aid in a defendant's rehabilitation and "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense." *Id*. at *9 (quoting *Johnson v. United States*, 529 U.S. 694, 709, 120 S. Ct. 1795, 1805 (2000)). *See also United States v. Granderson*, 511 U.S. 39, 50 (1994); *United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015). Thus, "[t]hose who no longer need the rehabilitative purposes of supervised release may qualify for early termination." *Id*.

Section 5D1.4 provides six factors to consider in determining whether to terminate supervised release:

    i.    any history of court-reported violations over the term of supervision;

    ii.    the ability of the defendant to lawfully self-manage (*e.g.*, the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);

    iii.    the defendant's substantial compliance with all conditions of supervision;

    iv.    the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;

    v.    a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and

3

vi.    whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

These factors all support termination of Johnson's supervised release. Over the course of his 28-year prison sentence, Johnson did not receive a single disciplinary infraction. *Johnson*, 754 F. Supp. 3d at 313. His record on supervised release has been similarly exemplary. The Probation Department reports that he has fully complied with every condition of supervision. Response to Pro Se Early Termination Request, Dkt. 208.

During his incarceration Johnson actively engaged in educating and helping other inmates adjust to prison life. Since his release, he has continued these worthy endeavors. Johnson and his wife run a nonprofit, Champions for Change, which helps at-risk youth and those returning from incarceration to build better lives. He has spent the last year speaking at community venues, including schools, youth centers, and faith-based organizations, using his life experience to help community members and at-risk youth avoid making the same mistakes he made. Johnson's wife described in a letter to the Court that "Walter made it his mission to turn his experiences into a source of education, empowerment, and reform." Dkt. 211.

In addition, Johnson has participated in and graduated from the District of Connecticut's Reentry Court program. The Reentry Court is a voluntary program that "offers an intensive alternative to traditional supervision with a focus on encouraging participants to live pro-social, law-abiding lives, and helping participants to stabilize their lives by means of access to community services and benefits." *Reentry Court*, United States District Court, District of Connecticut, https://perma.cc/8MP6-6EC4.

These post-release activities constitute pro-social activities, demonstrate Johnson's ability to lawfully self-manage, and pragmatically render nugatory his risk level. In sum, Johnson has demonstrated remarkable and continued rehabilitation since he was released. And given his rehabilitation, his age, and his conduct while incarcerated and on supervised release, I have no concerns about the public's safety. Notably, the Probation Department has no objection to granting Johnson's motion. *See* Dkt. 208. Termination is thus warranted by "the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).

### III.

Walter Johnson's story is the perfect example why the First Step Act is so important. He is the statute's veritable poster child. I imposed a lawful but excessively long prison sentence which would never have been imposed today. Despite no prospect of release before the First Step Act's passage, Johnson was a

model inmate and dedicated himself to his own rehabilitation and supporting and mentoring his fellow inmates. Without the First Step Act, it would not have been possible to correct Johnson's excessive sentence or recognize his remarkable rehabilitation.

The First Step Act has been transformative for many formerly incarcerated people. From October 2019 through September 2025 (the most recent month for which data has been released), district judges granted 5,829 First Step Act motions for a reduction of sentences. U.S. Sentencing Comm'n, Compassionate Release Data Report, at Table 1 (Dec. 2025); U.S. Sentencing Comm'n, Compassionate Release Data Report, at Table 1 (Dec. 2022).

Although there is not yet recidivism data for those who, like Johnson, have been granted release by a judge, the most recent data for those who have qualified for release by either the Bureau of Prisons or the courts under the provisions of the First Step Act shows that "the recidivism rate for this group stands at 9.7 percent compared to 46.2 percent for all people released from Bureau of Prisons facilities[.]" Jessie Brenner & Stephanie Wylie, Brennan Ctr. for Just., *Analyzing the First Step Act's Impact on Criminal Justice* (Aug. 20, 2024). Because the standards for granting release are so strict, the recidivism rate for those released from incarceration by the courts is likely even lower. This data reflects that the

6

First Step Act has succeeded in identifying and releasing prisoners who no longer need to be incarcerated and can safely reenter society.

The First Step Act has given worthy prisoners a second chance to become law-abiding, valued members of society. It also gives judges a second chance to consider whether their initial sentences were just. *See Johnson*, 754 F. Supp. 3d. at 318.

However, the First Step Act only covers those in federal prisons. According to the Bureau of Justice Statistics, approximately 88% of all prisoners are in state prisons. Derek Mueller, Dep't of Just. Bureau of Just. Stat., *Prisons Report Series* (Dec. 2024). Many states, however, lack a comparable First Step Act. By one estimate, 25 states have no mechanism for judges to review lengthy sentences. Sara Cohbra and Becky Feldman, The Sentencing Proj., *The Second Look Movement: An Assessment of the Nation's Sentence Review Laws* (Aug. 27, 2025).

For example, in New York, the Second Look Act has been introduced in successive sessions of the state legislature but has not yet been passed. *See* S.B. S158, 2025–2026 Sen., 248th Sess. (NY 2025); S.B. S321, 2023–2024 Sen., 247th Sess. (NY 2023). The legislators should resolve their issues with the Act and enact it. There may well be other Walter Johnsons lingering in the State's prisons who no longer belong there. For example, John J. Lennon, the renowned prison journalist

7

and author[1] who has been imprisoned in New York State for the past 24 years, would have the opportunity to be considered one of them.

The First Step Act has been a resounding success. It was enacted with extraordinary bipartisan support by Congress and signed into law by the President, who supports giving worthy incarcerated people a second chance. *See* Block, *A Second Chance: A Federal Judge Decides Who Deserves It* (2024). Those states without an equivalent should follow the lead of Congress and the President and enact statutes to provide for "second look" judicial review of sentences.

**IV.**

Walter Johnson's motion for termination of supervised release is **GRANTED**.

**SO ORDERED.**

 _/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 26, 2026

---

[1] Lennon has won numerous awards for his reportage and criticism. His stories have been finalists for the National Magazine Award in Reviews & Criticism, the National Magazine Award in Feature Writing, and he won the National Magazine Award for Single-Topic Issue. He recently published his first book, *The Tragedy of True Crime*. *About*, John J. Lennon, https://perma.cc/QY7V-EXJ5.